| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

UNITED STATES OF AMERICA      §
                                    §
*versus*                         §    CASE NO. 1:12-CR-74(1)
                                    §
JAMES G. GRENINGER        §

## MEMORANDUM AND ORDER

Pending before the court is Defendant James G. Greninger's ("Greninger") Motion for Early Termination of Supervised Release (#129), wherein Greninger, through counsel, seeks early termination of his five-year term of supervised release. Greninger contends that his supervising United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas, Beaumont Division, does not hold a position regarding this motion. In actuality, his Probation Officer prepared a report and recommends that the court deny the motion, allowing Greninger to continue his supervision as previously ordered. The Government is also opposed to Greninger's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Greninger's motion should be denied.

I.     <u>Background</u>

On November 28, 2012, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a two-count First Superseding Indictment against Greninger, charging him in Count One with Possession with Intent to Distribute a Controlled Substance, to wit, 50 grams or more of "actual" methamphetamine, in violation of 21 U.S.C. § 841(1)(1), and in Count Two with Possession of a Firearm in Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c). Pursuant to a written plea agreement, Greninger pleaded guilty to the offense charged

in Count One of the Indictment on April 5, 2013.  On October 18, 2013, the court sentenced Greninger to a term of 120 months' imprisonment, followed by a five-year term of supervised release.  Greninger began his term of supervised release on August 20, 2021, in the Eastern District of Texas, which is projected to expire on August 19, 2026.

In his motion, Greninger, age 53, asks the court to terminate his supervision at this time, having served half of his five-year term of supervised release.  Greninger maintains that he has completed all his terms of supervision and has no need for programming or treatment.  He adds that he has no conditions requiring any sort of programming or counseling, and none has been needed during the course of supervision.  He states that his Probation Officer has indicated that Greninger is in full compliance in all areas of supervision, including making monthly payments on his restitution obligation.  Greninger further alleges that he has made progressive strides towards payment of his restitution obligation and will continue to do so even after supervision is completed.  Although his Probation Officer agrees that during his term of supervision, "Greninger has maintained employment, successfully completed substance abuse treatment, all drug tests have returned negative for illicit drug use, and he has no documented violations of supervision," he points out that no restitution was ordered in this case.

Greninger asserts that he currently operates a trucking business that transports logs in "Newton, Jasper, Woodville[1] Counties and surrounding areas" and that he employs two drivers. He claims that terminating his supervised release would enable him to expand his trucking business and "to better support himself/family financially."  He avers that he is a trucker and will qualify

---

[1] There is no Woodville County in Texas.  The court assumes that Greninger is referring to Tyler County, where the town of Woodville is located.

for better routes if he is able to travel freely through Texas.   Greninger also contends that terminating his supervised release early will save government resources by eliminating the expenditure of more that $3,000 in monthly supervision costs.

II.   Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[2] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019).   "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021).  Instead, the defendant bears the burden of demonstrating that early termination is warranted.  *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018).  Early termination "is not warranted as a matter of course." *United States*

---

[2] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

*v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022).  "To

the contrary, it is only 'occasionally' justified."  *United States v. Shellef*, No. 03-CR-0723 (JFB),

2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d

32, 36 (2d Cir. 1997)).

District courts enjoy considerable discretion in determining when the interest of justice

warrants early termination.  *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017);

*United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3;

*see Melvin*, 978 F.3d at 52.  Compliance with the terms of supervised release and with the law

alone is not enough to merit early termination; such conduct is expected and required.  *United

States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of

supervised release is expected, and without more, insufficient to justify early termination.");

*United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023)

("[C]ourts have generally held that something more than compliance with the terms of [supervised

release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No.

10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328,

at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C.

§ 3553(a) factors did not support early termination, noting that the defendant "engaged in constant

serious criminal behavior when he was given chances before"); *United States v. Sandles*, No.

11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that

the conduct of the defendant necessary to justify early termination should include more than simply

following the rules of supervision; otherwise, every defendant who avoided revocation would be

eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL

4

4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary

circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).   Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

Greninger's offense of conviction entails his possession with intent to distribute 50 grams or more of "actual" methamphetamine.  In early 2012, officers learned that Greninger was selling high quality methamphetamine in Newton County and Jasper County, Texas.  On March 29, 2012, a cooperating source ("CS") was provided $700 in U.S. currency to purchase methamphetamine from him.  The CS traveled to Greninger's residence in Burkeville, Texas, and purchased 3.5 grams of "actual" methamphetamine.  On May 18, 2012, the CS was provided $1,000 to purchase more methamphetamine from Greninger.  The CS arrived at Greninger's residence and purchased 9.6 grams of "actual" methamphetamine.  The CS reported observing at least a half of an ounce of methamphetamine in plain view within the residence.  Later that day, officers obtained a warrant to search Greninger's residence.  Officers located and seized seven rifles, five handguns (including a loaded Ruger .22 caliber revolver near a quantity of methamphetamine), $11,505 in

U.S. currency, and 98.8 grams of "actual" methamphetamine during the execution of the warrant. At the time the search warrant was executed, Greninger admitted that he had used methamphetamine earlier that day and stated that his source of supply resided in Houston.  He also remarked, "Once you are in the game, it is hard to get out."  Greninger was found responsible for a 111.9 grams of "actual" methamphetamine.

Greninger's Presentence Investigation Report ("PSR") indicates that he has a history of substance abuse.  He informed Probation that he began using methamphetamine in 2006 or 2007, six or seven years prior to his interview in 2013, and his last use of the substance was on the morning of his arrest on May 18, 2012.  He estimated that he was using one to two grams of methamphetamine daily.  Greninger stated that he was addicted to methamphetamine but received no treatment while on bond.  He expressed an interest in treatment, commenting to Probation, "As he knows if he could get away with it, he would probably go back to using it."  The PSR further notes that Greninger reported that he had no income and that he had not worked since 2009.

In this situation, the court finds that Greninger's post-release conduct does not warrant early termination of his supervised release.  Although Greninger maintains that he has fully complied with his conditions of release to date, he identifies no new or exceptional circumstances or needs.  He states that he has established a trucking company that hauls logs in several Texas counties, but he maintains that early termination of his supervised release would allow him to expand his trucking company and qualify for better routes if he is able to travel throughout Texas.

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family.  *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and

family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer).  A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to his travel restrictions" typically results in denial of his request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval.  *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for both business and charitable work, where the defendant failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business").  In this instance, the court finds that Greninger's desire to travel for business purposes is not sufficiently specific to warrant early termination, as he does not detail the precise routes he has sought and been denied or how his compensation would be affected by traveling on additional routes.  Greninger also does not explain why his two drivers cannot cover any routes that extend beyond the Eastern District of

Texas.  Moreover, there is no indication that he has requested permission to engage in domestic travel beyond the geographical area permitted by his conditions of supervised release, which is commonly authorized by Probation with proper notice.  *See Lynn*, 2022 WL 2446328, at *2. Furthermore, Greninger provides no supporting documentation regarding the formation, existence, and/or operation of the trucking company or any information showing that the two drivers he employs are prohibited from driving throughout the State of Texas.

Courts have similarly denied requests for early termination of supervised release where a defendant claims that early termination will improve his employment prospects without providing concrete support for this contention.  *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1-2 (S.D.N.Y. Aug. 3, 2015) (refusing to grant early termination where the defendant failed to "establish[ ] that the terms of his supervised release pose[d] any hazard to his employment" and did not "explain[ ] how the terms of his supervised release [had] 'even an intangible impact' on his employment" (quoting *United States v. Black*, No. 10 Cr. 303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013))); *United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal. Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business

opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit his ability to make a reasonable living"). Here, Greninger fails to explain how the conditions of his supervised release limit his employment opportunities in a significant manner. He does not clarify how being on supervised release keeps him from furthering his career or achieving additional goals. Indeed, Probation reports that on September 1, 2022, Greninger was transferred to the Low-Risk Administrative Case Load. On the low-risk case load, Greninger is required to submit monthly supervision reports, is subject to random personal home visits (typically on an annual basis) and drug testing, and is also monitored for any other changes or identified concerns. Nonetheless, according to Probation, "contact with the probation office is minimal." Yet, "he is still accountable for his acts and any violations of supervision if they arise." Under the circumstances, the court finds the current conditions of Greninger's supervised release are not onerous and remain appropriate in view of his possession and distribution of a substantial quantity of "actual" methamphetamine as well as his admitted use and addiction to methamphetamine.

As for Greninger's argument that terminating his supervised release will alleviate financial burdens on Probation, the court notes that the cost of a defendant's continued supervision is not among the Section 3553(a) factors that must be considered when deciding a motion for early termination of supervised release. *See* 18 U.S.C. § 3553(a). Indeed, the fact that supervised release requires the expenditure of government funds is certainly not a "new or unforeseen circumstance[ ]." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89). While some courts have considered the financial cost of supervision, such an argument does not necessarily merit an early termination of supervised release. *See, e.g.*, *United States v. Mathis*, 221 F. Supp. 3d 1131, 1134 (S.D. Iowa 2016) (declining to terminate the defendant's supervised release where

10

the defendant contended, among other arguments, that the "annual cost to taxpayers" of his supervision was a "needless expense"); *United States v. Sussman*, No. 08-0891 (DRD), 2015 WL 132543, at *2 (D.N.J. Jan. 8, 2015) (denying early termination despite the defendant's assertion that granting his motion would "reduce the costs imposed on the government"). In this situation, Greninger's placement on the low risk case load already led to a reduction in supervision costs. Accordingly, Greninger's financial burden argument falls short, particularly when viewed in light of the Section 3553(a) factors that weigh against early termination.

At this time, Greninger has served half of his five-year term of supervised release. While Greninger's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior involvement in a crime involving drug distribution in which he also possessed a number of firearms as well as a history of methamphetamine addiction and abuse. Requiring Greninger to complete his entire, five-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a minimal burden on Greninger due to his inclusion in the low-risk case load. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Greninger does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court. Thus, although Greninger appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. The court,

likewise, is of the opinion that Greninger's current sentence, including the five-year term of supervised release, was appropriate at the time of sentencing and remains so.  *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  As Probation points out:

> Mr. Greninger is certainly to be commended for his compliance, progress, and sustained remission from illicit drugs.  He does appear to have a genuine desire to be successful.  However, mere compliance with the conditions of supervision does not necessarily warrant early termination.  The U.S. Probation Office in the Eastern District of Texas does not traditionally recommend early termination of supervision in cases where the defendant's offense conduct involved distribution of a sizeable amount of methamphetamine.  Therefore, the U.S. Probation Office respectfully recommends that Court deny the motion and allow Mr. Greninger to continue his supervision as previously ordered.  The probation office will continue to work with Mr. Greninger on any goals or objectives to facilitate his continued success.

The court concurs with Probation's assessment of the situation and finds that early termination of Greninger's term of supervised release would not be in the interest of justice.

III.    Conclusion

In accordance with the foregoing, Greninger's Motion for Early Termination of Supervised Release (#129) is DENIED.

SIGNED at Beaumont, Texas, this 28th day of May, 2024.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE